Mr. Epstein, Ms. McGillip. Mr. Epstein, do you go, every time I probably screw this up, but Epstein or Epstein? Epstein. Okay. Thank you. Thank you, Your Honor. Good morning, and may it please the Court. Robert Epstein on behalf of the appellant, Mr. Alfredo Carbajal-Valenzuela. At the Court's permission, I'd like to reserve three minutes of time for rebuttal. You sure may. Thank you, Your Honor. The issue on this appeal is the District Court's denial of the mitigating role reduction. With all due respect to the District Court, the Court came to the wrong result here because it did not apply the right analysis. The right analysis was set forth by this Court's opinion in the United States v. Bezaza-Zapata, a decision offered by Judge Rendell, in which this Court made clear that the mitigating role guideline requires a comparative analysis. The defendant's role and culpability must be compared with the other participants in a criminal activity, and this Court provided factors for District Courts to consider in that regard. The sentencing commission has now provided a new set of factors. In this case, the District Court did not do the comparative analysis. Am I correct that the evidence is thin as to what the comparative factors would be? That is, how much is really known about this organization? Not a lot, Your Honor. As Judge Becker pointed out in the Rodriguez case, which followed Bezaza-Zapata, a true minimal participant like Mr. Carbajal is not going to have knowledge about the other people involved. They're going to leave him in the dark. They don't want him to know the scope and structure of the organization. And what Judge Becker said was that's not a reason not to give him a reduction. That's a reason to give him the reduction. And the sentencing commission has applied that wisdom. It's the number one factor now for courts to consider, is does the defendant have knowledge of the scope and structure of the organization? And here he has none, and that's a factor that cuts strongly in his favor, and it's a factor the District Court did not consider here. And so if it were a million dollars worth of heroin, the argument would still be the same. Yes, Your Honor. And in fact, it is approximately a million dollars of heroin here. And what we know from Bezaza-Zapata is there are other participants in a courier case like this. There are the people who supply the drugs, and there are people who are purchasing the drugs. And they're the people who are the major players in this because they're organizing and planning the activity. They're the ones with decision-making authority. They're the ones with the proprietary stake in the heroin, and they're the ones who are going to make the vast majority of the profits. Mr. Carbajal, when you look at those factors and compare him to those other participants, he's clearly far less culpable than them and is deserving of the four-level mitigating role adjustment. The problem here is the District Court didn't do that analysis. How about under the guidelines? Because he was convicted of an offense significantly less serious than that warranted by his conduct in terms of the quantity, mitigating role reductions ordinarily not warranted under Commentary 3B. He was charged with much less than what he could have been charged here. But he was sentenced for the amount that he was carrying. And what that provision says, if Your Honor looks, it says if the defendant is getting a lower offense level because of the government's charging decision, a lower offense level. He didn't get a lower offense level, did he? Okay, regardless of what he was charged with as a crime when it came to sentencing. Exactly. Do we factor in the downward variance and the safety valve? No, those are actually separate considerations. So he was deserving of the safety valve the District Court found. Otherwise it would have been 120 months, right? Yes. So he was deserving of the safety valve and he was also deserving of the variance because of his attempted cooperation. Those aren't in some sense mutually exclusive with him getting a mitigating role adjustment. In fact, they're in some sense compatible because the District Court credited his account of what happened. The District Court had to credit his account in order to give him the safety valve. So given that his account is credited, his account certainly meets the burden for a mitigating role reduction. The government doesn't really dispute that. Initially the probation office gave him, what, 187 to 108 months? Yes. And then that was knocked down to something like 71 to 87 or whatever. And the judge then buried below that down to 57. Right. I mean, I guess the question becomes if there was not a comparison done and that was incorrect, do you think there's even a chance that he would get much less than 57 months? Yes, Your Honor, because the judge has already found that he should be given some credit for the attempted cooperation and he should get the safety valve. Now if the judge finds that he also should, under the proper analysis, get a minimal role reduction, even if he only gave him the two-level minor role reduction, for example, and also gave him under 2D1.185, if you get a mitigating role reduction and you started with a base offense level of 32, which you did here because of the quantity of drugs, then you're entitled to another two levels off. So we'd be looking at four levels off here at a minimum if he gives them the two levels off for mitigating role. If he gives them the four levels off for mitigating role, which we strongly argue is correct here, he would be down to 30 to 37 months. But how can you show this was clear error? How can you show that there's just no way but that he should have gotten this reduction? Well, I think when you... The facts. Two responses to that. First, if you look at all of the factors that the Sentencing Commission has now provided and you apply them to this case and you do the comparative analysis, I think it is clear error. But we don't even get there, Your Honor, because this court has said that it applies a mixed standard of review to this issue. And Richard says it's clear error, doesn't he? Well, if you look, Richard says it's clear error with respect to the ultimate determination of applying the law to the facts. Right. Right. But here there's a preliminary question. Did the court apply the appropriate analysis in the first place? That's reviewed with a plenary review, and this court said that in Izaza Zapata, and it said it in Carr. And Richard was relying upon Carr for that statement. And Richard, in fact, at the beginning of the decision says we're applying a mixed standard of review. There's no legal question here about the application of the guideline. It's just a factual question. It's just an ultimate determination question. But in Izaza Zapata, Your Honor, found that the district court committed legal error because it didn't apply the appropriate analysis. That's the situation we have here. District court committed legal error because it didn't apply the appropriate analysis. So ordinarily the case then gets sent back unless it's harmless error, unless there's no possible way that he would qualify for the reduction. But here there's the government niche. He at least has a colorable argument for the reduction. So given that the court did not apply the appropriate analysis, committed legal error, the case should be sent back for the court's consideration of the issue with the appropriate factors that the Sentencing Commission has now provided. And the Sentencing Commission provided these factors precisely because of the fact that it views role reduction as being used too sparingly. The Sentencing Commission would like to see district courts provide more role reductions. It's provided factors that make clear that a case like this is a perfect candidate for a role reduction. Why don't we hear from the government and then we'll get you back to me. Thank you. May it please the court, my name is Emily McKillop. I represent the United States of America. Your Honor. If there's any case that would seem to cry out for a possible mitigating role, a person with apparently no prior record who needed $300 to pay for his daughter's medical care and then gets roped into this thing saying, well, just get on the bus and don't worry about it. Doesn't that really seem like, at least superficially, a case that cries out for a mitigating role reduction? Your Honor, that determination is to be made by the district court. And as Judge Rendell noted, that is reviewable by this court for clear error. But doesn't it have to legally take into account a comparison with other people in connection with this? It does, Your Honor, and I would like to address that because I believe my What the court noted was the amount of three different things, the monies involved, the quantity involved, and the distance traveled. The quantity involved gives you the sentencing guideline. None of that is a comparison. There are other surrounding circumstances, but it doesn't say anything as to his role in the offense. Well, there are several responses to that. One of them, Your Honor, is that the district court did not say any less than was required. The law in the circuit is quite clear that going back to Supreme Court law, Rita, you do not have to spell out every step in your decision. We need to be able to discern from the reasoning of the district court that it considered all the relative factors, right? And how can we discern that from this? Because the district court said so. It said it considered the totality of the circumstances. It doesn't say that. It doesn't say that. It considered all the facts, circumstances, and the court considers everything that was present to it. Nevertheless, the court cannot find that based upon the monies involved, quantity involved, the distance traveled, and the other circumstance, this was a minimal participant. That's almost like saying, and the case law said you can't just look at, for instance, quantity. Here it looked like just really looked at quantity and the character of the crime as compared to what he did vis-à-vis what someone else did. Your Honor, what the district court said was he considered everything that was presented to it. And one of the things that was presented to the court was a very detailed memorandum by defense counsel stating every one of the application note three factors. Those were laid out. The court said he considered the matters that were presented to them. That included those, the listing of the factors and the argument relating the facts to those factors. I'm sorry, what was before the court as to who did what in the overall scheme? The defendant's own account, which was presented to the court both in a statement at the change of plea hearing, not so much because there was a switch of district judges here, but defense counsel submitted a supplemental letter that is factual conduct, some of it referring to the defendant's efforts and cooperation, but setting out the defendant's account. The defendant's account is, as the court noted, all we have here for facts. But the district court said, I have considered what was presented to me. That included a detailed briefing on the facts, a detailed briefing on the factors. And he said, I've considered it. Nevertheless, the court cannot find that based upon, I've considered everything. But, you know, just because of the money, the quantity, the distance, and the other, I can't say he was minimal. Well, it looks like nevertheless means, but regardless of all that, this is what I'm looking at. It means, Your Honor, I have considered all that, but I find that the factors that weigh most heavily in this case are the amount of drugs and the amount of the travel, and those are important, Your Honor. Isn't that error? I mean, Eleventh Circuit and Cruikshank had said there's legal error to say, you know, there's such a large quantity, you know, I can't give a minor role. But that's not what it said. Cruikshank said quantity, that's dispositive, that's all I'm looking at. That's not what happened here. What we have here is a man who, despite his statement about the $300 debt and the, you know, maybe then he was going to get $1,500, and first he was going to move money, and then they gave him drugs, leaving, not saying you should disregard that, but the core offenses he knowingly and voluntarily undertook to transport, what defense counsel has just admitted, was a million dollars worth of heroin, and he agreed to transport it unsupervised across the entire width of this continent, literally from sea to shining sea. He started in Los Angeles, took a circuitous route. And what's that, any of that got to do with a comparison to others in connection with this particular? What it does, Your Honor, is show the degree of responsibility that he undertook. But what was the degree of responsibility with regard to the kingpins in this particular group, for example? And, Your Honor, I'm very glad you mentioned that, because that was a point on which I feel a need to correct my learned colleague. He is perhaps not aware that the application notes that we're trying to apply here, they use the phrase compare it to the average participant in the criminal activity. That, however, has a specific meaning. And in the reason for amendment stated to that, the sentencing commission said essentially we are resolving a circuit split. The Seventh and Ninth Circuits say the people in the criminal activity are restricted to this particular offense. The two other circuits say, no, you compare them with the typical participant in such an offense. Now, this typical participant is the view that defense counsel is taking. That is not the view that the sentencing commission took. However, as they make clear in their reason for the amendment, the comparison is only to the participants in this particular criminal activity. We have absolutely zero evidence that there was any such person as a kingpin. We have, and the district court had, of course, since it was the district court's factual decision, really a knowledge of only three participants. The only information we have about the criminal activity that comprised this particular crime were three participants. One of them is the defendant himself. Another is the defendant's cousin who contacted him about participating in this offense. A third is what I would characterize as the most likely person should he have been prosecuted for a minor role offense, which is the unknown person who delivered two suitcases to the defendant's hotel room. We have no idea who that person was. We don't know to what degree that person had any knowledge what was in the bags. Those are the only people we know about. We do know that the defendant, when he reached Philadelphia, was to call some phone numbers to try to dispose of the drugs. What actually happened was he was calling his cousin, so it is unclear to me on the record whether the defendant even knew of whatever persons in  the bag that was in the suitcase. So really, and it is, again, not the defendant's fault, but our realm for comparison is not the theoretical, the typical, the wide-ranging, here is our drug distribution organization. They have kingpins, they have suppliers, they bring in lots of these couriers. We cannot engage in that speculation here because of deliberately what the sentencing commission deliberately said. Well, it could be that the district court agreed with the government that this was a ridiculous story that he was making up and didn't believe that he was really just a duped mule. But the district court doesn't say that, and the evidence that we have would seem to say he was a reluctant mule who did it because he was under duress, basically. And he was told in L.A. if you just transport $15,000 across, and then they, nope, we're not going to do that. They give eight kilograms of heroin. And, you know, it's like a bad movie where you get roped into it. And so that person would seem, again, on the surface to demand some type of comparison in order to figure out whether there should be a mitigating reduction, role reduction. And I would invite the court to look at the reason for the amendment. It's amendment 794 that put in all of these factors. And it says the criminal activity to be considered is what we know about the particular crime. But we also have a decision of our court that when you take this into account, you have to do, you have to touch certain bases. One of the bases is you have to touch is a comparison. And I don't have enough before me to really make an informed decision here. The district court felt that the court did, and, Your Honor, what we have is a court that said I have looked at everything. And I would remind the court that, as I said before, this was a judge new to the case. So we can believe that the judge took some extra effort to study up on the case. But we can't tell that the judge did know that he really needed to do a comparison. We can't tell that he realized that that's what he was supposed to do. Your Honor, it was thoroughly briefed to him in the party's submissions, which he said he read what was presented to him. I know. A lot of stuff is thoroughly briefed to us, but we may not. And, in fact, the defense counsel at sentencing argued factors. She did not specifically relate them to the factors that are in the application note or mention those, but she argued those factors to him. And what the court said was I find two of those factors to be of greater significance. He did not commit the legal error of saying there's such a big quantity here that I can't find that it was a minor role. That would have been a legal determination. If that had happened, we'd have a legal issue here. We do not have a legal issue here. It sounds as if what he is saying is perhaps. I don't believe your story, so I really don't have to do a comparison. And I just need to go on the amount of drugs, the distance traveled, et cetera, et cetera. But but we don't have any of that. He is not saying that your honor. He is saying he had such said that he will give the benefit of the doubt to the defendant in believing the story. Now, that wasn't in the context of the safety valve, but I believe it's on the same page of the transcript. It was immediately before. But then he said these two factors are the ones that I believe are important in this case. And he did did conduct an analysis of the facts of the particular case. And those factors are important. This was not the ordinary mere courier. This was someone who was trusted with a million dollars. Let's just say it's a million dollars. It's a million dollars worth of heroin. And he's recruited by his cousin, and he is sent cross country on a series of buses with these drugs with no supervision at all. That is a very high degree of trust. And that is enough to say that the court didn't didn't say I'm skeptical about this because of this. The court didn't react at all. The court need not have been skeptical about the three hundred dollars and the fifteen hundred dollars. And originally it was moving money. The court could have believed all of that, but still have noted the vastness of the defendant's undertaking. And he does not say he didn't know what he was doing. He knew what he was doing. He said his cousin put pressure on him. But he agrees he knew what he was doing. Essentially, he was scared. Your Honor, as adult human beings, we are sometimes put in situations that scare us. And we are we are counted on by the law to make the right decision. And he could have made the right decision at any point during this trip. He could have said I am being pressured to do something that I believe is wrong. I'm going to the authorities. And he went through many cities. There was no one watching him. He could have done that. He did not do so. But if anything, it looks like the judge almost credits his story because he says, well, in terms of not passing the smell test, but I've often told students that I teach. The one time a judge says I've heard it all, I'm not going to listen, that's the one time it could be true. And I'm going to give the defendant the benefit of the doubt and sustain it. It's almost like, you know, maybe it doesn't pass the smell test, but, you know, I'm going to give him the benefit of the doubt here. Almost like, you know, I think that's probably what happened. It does look like he credits the story and that based on that story, he still finds that the defendant the importance of this defendant's activity. The scale, the scope of it, the degree of freedom that he did have in executing that duty made him not less culpable than the average participant. And isn't that contrary to what we have said? That the scope of the overall activity, the money involved and the travel, that that's what says he is not minimal? Isn't that contrary to what we have said you have to consider? What's your best case for the proposition that that's incorrect? It's the guideline that says we consider the totality of the circumstances and that is what the defendant... But we've interpreted the guidelines and we've, in the case of Assaz-Zapata, said not enough. Assaz-Zapata was before, obviously, the amendment that we've been talking about. And in Assaz-Zapata, the government submits, that's different. That is not what the district court did here. The district court did not say, I am so overwhelmed by the quantity of this that I am, I can't, you know, I can't even consider anything else. That's not what this district court said. This district court said, I've considered everything that's been put in front of me and we know he was thoroughly briefed on all of these factors. I have considered the defendant's story, which as the court just noted, the judge appeared to credit. I've considered the defendant's story. I've considered the defendant's story. I've considered the debriefing of the parties, which sets out all of the law correctly. And my application of the law to the facts is that he was not substantially less culpable than the average participant. He cited, in any factual situation, there are going to be one or two, maybe three or four facts that are of more significance than others. He just cited two of them. What were those facts that he cited? In this case, it was the magnitude, both of the defendant's unsupervised travel and the amount of the drugs with which he was entrusted to take from Los Angeles to Philadelphia. Those were key factors here. And if you're looking at the knowledge of the scope of the offense, that is the scope of the offense as far as we know. And the defendant was fully cognizant of that. He knew the job was to take drugs from L.A. to Philadelphia and deliver them through further instructions. He knew that. The court, you know, might have thought, well, you know, given all of this and given the fact that he was the deliverer, and but for him, and he was the cog in the whole thing, then it wasn't minor. But the court didn't reason through it that way. Well, the importance of the defendant's role is also one of the factors. And frankly, Your Honor, we don't know the extent to which the defendant's role is important. We don't know exactly how the judge reasoned. And that is, the judge is not required to say any more than his conclusion. However, if the defendant had actually felt that the district court's explanation of its reasons was inadequate, that is a matter that should have been objected to. And we cite to Flores Mejia, we believe that that is a sort of procedural error, that if there was an error, should have been handled by an objection. And if there was an objection, under Flores Mejia, we'd be looking at plain error review. Your Honor, however, my time is up, and I would just submit to you that this is the application of a lot of facts. It is, therefore, reviewable only for clear error, and there is no clear error here. Thank you. Ms. Ripson? Ms. Ripson, the point that Ms. McKillop just made is actually correct. I engage in the right analysis. The fact that no objection was made at the sentencing hearing makes this a plain error, clear error situation. Respectfully, I disagree, Your Honor. An objection was made here. This is fundamentally different than Flores Mejia, where no objection was made. At the end of the sentencing? There was no objection made in Flores Mejia, and the issue raised on appeal was... And there was an objection made after he was sentenced, saying, Your Honor, I'm sorry, your analysis, you didn't cite comparative role? Right. No, this Court in Flores Mejia specifically said if an objection has already been made prior in time in sentencing, then you don't have to object again after the Court explains its sentence. What was the objection made at sentencing? So here, to the denial of the mitigating role reduction, which is the exact issue that we're raising here. But your point is not the denial. Your point is that in sentencing him, he failed to do the analysis, and that's the objection that should have been made after the sentencing. He said, Your Honor, with all due respect, you went over the quantity and the distance, but you didn't compare his role to others, and that's a basis for an objection. That's what had to have been said. And that's what led Flores Mejia to a step one guideline determination, where an objection has already been made to the denial of the reduction. It's the same thing as we do require at the end, if the judge has imposed sentence and hasn't given reasons, you have to say, Your Honor, with all due respect, Your Honor, you didn't cite the reasons for your ruling. And here it's the same idea, Your Honor, you didn't compare his role in deciding he wouldn't get a minimal reduction. And the only thing I could find on that was a footnote in a case called Kolodesh from our Court, 787F3-224, and it was a 239 note 19, and it suggested that Flores Mejia does not extend to a defendant's challenge to a guideline determination, which in effect would be step one. But I don't know if it was a holding or not, it was in a footnote. And there were three objections here. I mean, you had, he objected to the mitigating role recommendation in the pre-sentencing memo, he objected during sentencing, then afterwards the Court said, Is there anything else? And it says, We reiterate the objections that we have previously argued. Yes, Your Honor. And the other circuits that have looked at this issue, they're all, the Fifth, the Ninth, the Eleventh, they all apply the same rule that this Court does at step three with respect to Flores Mejia. They all apply that rule, but when it comes to a guideline determination like this, this exact guideline determination involving minor role, none of those courts require a post-ruling objection at that point, because the issue's already been fully briefed and presented to the Court. Now, any time the Court rules, obviously this Court is going to look at the Court's analysis, and we're going to look at the Court's analysis to see if there's actually an error made. But that doesn't mean that you have to make a second objection. Federal Rule of Criminal Procedure 51 specifically says you don't. That would be in the nature of an exception. Could you tell me, do we make any distinction on the amount of drugs? That is, if this had been a $10,000 stash of heroin, which it wasn't, is it permissible to take into account the amount of drugs? I wouldn't say it's necessarily impermissible, but what the Eleventh Circuit just said in Cruikshank, looking at the new commentary, the new factors that the Commission has provided, they say quantity is important. Quantity isn't a factor. That case involved 171 kilos. The defendant was the captain of a ship importing that 171 kilos. The Eleventh Circuit sent that back because they said the District Court put too much emphasis on the 171 kilos. So we have to send this back for the Court to consider all of the factors that the Commission's now provided. The defendant here was carrying a bomb that could injure thousands of persons. Otherwise, the facts are exactly the same. Would we use the same mode of analysis? I mean, I think this Court would. It might come to a different result in a case like that. It depends upon the facts and circumstances of that kind of case. But it's a very different situation, Your Honor. Thank you very much. Thank you to both counsels.